**The AETNA FREIGHT LINES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 74–1550.**

United States Court of Appeals, Sixth Circuit.

Aug. 18, 1975.

Warren Woods, Edward G. Villalon, Leonard Appel, Wilson, Woods & Villalon, Lawrence E. Lindeman, Washington, D. C., J. Mack Swigert, Taft, Stettinius & Hollister, Cincinnati, Ohio, for petitioner.

Elliott Moore, Assoc. Gen. Counsel, William H. DuRoss, III, Margery E. Lieber, Peter G. Nash, John S. Irving, Jr., Patrick H. Hardin, N. L. R. B., Washington, D. C., for respondent.

Before PECK and ENGEL, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

ENGEL, Circuit Judge.

This matter is before the court upon cross petitions filed by The Aetna Freight Lines, Incorporated and by the National Labor Relations Board for review and enforcement of an order of the NLRB, issued March 26, 1974, and reported at 209 NLRB No. 124. The Board found that Aetna was in violation of Section 8(a)(1) and (5) of the National Labor Relations Act, as amended (29 U.S.C. § 151 *et seq.*) by refusing to bargain collectively with Local Union 100 of the Fraternal Association of Special Haulers as the exclusive bargaining representative of Aetna's employees in a unit comprised of:

> "All drivers, including single owner-drivers and nonowner-drivers of leased equipment of The Aetna Freight Lines, Incorporated; but excluding trip lease drivers, multiple owner-drivers, office clerical employees and guards, professional employees and supervisors as defined in the Act."

The sole issue on appeal is whether the above described persons who drove trucks for Aetna are "employees" as defined in Section 2(3) of the Act, or whether they are independent contractors within the meaning of the 1947 amendment which provides that "The term 'employee' . . . shall not include . . . any individual having the status of an independent contractor . . . ." 29 U.S.C. § 152(3).

It is the position of Aetna that neither single owner-drivers nor non-owner-drivers of leased equipment are employees within the meaning of the Act, but are rather independent contractors, and that the Board's finding that non-owner-drivers are employees of Aetna is contrary to this court's decision in *Ace Doran Hauling and Rigging Company v. NLRB,* 462 F.2d 190 (6th Cir. 1972). Aetna further claims that the Board's finding that the single owner-drivers are employees of Aetna is contrary to the Board's own later decision in *Ace Doran Hauling and Rigging Co. v. Teamsters Local 4113,* 214 NLRB No. 84. For the reasons which follow, we affirm the holding of the

Board and grant enforcement of its order.

Aetna is a common carrier transporting specified commodities between points in 19 states throughout the eastern United States. In the conduct of its operations, Aetna is subject to the Interstate Commerce Act and the regulations promulgated by the Department of Transportation. The Interstate Commerce Act permits a carrier to lease trucks in order to supplement its own equipment. Aetna leases approximately 617 pieces of equipment. The standard lease which is entered into between Aetna and the owners of the equipment provides that the owner is deemed an independent contractor. The lease also specifies that Aetna is entitled to exclusive possession, control and use of the leased equipment. The leases are generally terminable at will by either party. The question in this proceeding is the status of two categories of drivers of leased trucks: the single owner-drivers (individuals who own and drive a single truck leased to Aetna) and the non-owner-drivers (individuals who drive trucks leased to Aetna by a multi-unit owner).

█ In *Ace Doran, supra,* this court stated that in determining whether an individual is an employee or an independent contractor, the correct legal standard is the "right to control test" adopted by the Board in *Deaton Truck Lines, Inc.,* 187 NLRB No. 102, *enforced* 337 F.2d 697 (5th Cir. 1964). That test basically is an application of common law concepts which were incorporated into the Act by the 1947 amendment to provide "for a more traditional agency concept of 'employee'" as commanded by Congress. *Ace Doran, supra,* 462 F.2d at 193. We also noted in *Ace Doran* the language of the Supreme Court in *NLRB v. United Insurance Co. of America,* 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968), that:

" . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive. What is important is that the total factual context is assessed in

light of the pertinent common-law agency principles."

Thus, in evaluating the evidence here, we again emphasize that it is the totality of the evidence before the Board with which we are concerned. Moreover, our scope of review is limited for "even as to matters not requiring expertise a court may [not] displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

█ Because this court in *Ace Doran* denied enforcement of that part of the bargaining order directing the carrier to bargain collectively with the non-owner-drivers who drove equipment leased by Clarence Schneider to Ace, Aetna here argues that a contrary result in this case would be inconsistent. We do not agree. In the instant case there is strong evidence that in addition to those obligations imposed upon it by ICC regulations, Aetna exercises control over the hiring and firing of drivers engaged by the multiple owners by refusing to execute leases where drivers of the leased equipment are found unacceptable and by employing lease cancellation as a means of enforcing driver discipline and discharge. Control is also evidenced by the testimony of a non-owner-driver that instructions concerning his daily tasks as a driver were received from Aetna and not from the multi-unit owner. Moreover, grievances were not lodged with the multi-unit owner but rather were settled directly with Aetna. It is thus clear that Aetna exercises substantially more control over non-owner-drivers than did the carrier in *Ace Doran.*

Aetna also urges that the Board's position here is contrary to the subsequent *Ace Doran* decision, 214 NLRB No. 84, in which the Board found single owner-drivers to be independent contractors. We do not agree. Again the difference lies in the amount of control shown by the evidence. Quite clearly the Board

found in that latter decision that "The independence and freedom evidenced in the record as to trip leasing is, in our judgment, of considerable persuasive effect in showing lack of control by the Employer and, instead, substantial independence by the owner-operators." In contrast is the close control over trip leasing exercised by Aetna. Its own language in a notice to single owner-drivers demonstrates the difference:

"In the past we have gone to great trouble to line up operators with every conceivable kind of 'sticker, card, decal, permit', or whatever is necessary FOR YOU to operate legally in our many states. Some operators choose to 'use' AETNA AS A MEANS to get themselves Qualified to operate in numerous states, and then REFUSE TO HAUL for Aetna on the pretext that the load did not suit them. This provided a reason for SUCH operators to accept SINGLE TRIP LEASE loads for other carriers, illegally.

"This practice is going to STOP no matter what drastic steps WE MUST TAKE. We are not in the business of furnishing equipment for our greedy competitors."

Finally, we note that Chairman Miller, who in his concurring opinion below, expressed dissatisfaction with the majority tendency to find employee status in nearly every case, nevertheless found in this case sufficient control over the manner in which the individual drivers operate to support a finding of employee status:

"The severe restrictions on trip leasing, the use of lease terminations as discipline for failure to accept loads, the carefully prescribed time restrictions on deliveries, the detailed and uniformly applied rules regarding procedures in the event of delays and accidents, and the 'how to do it' directions covering other aspects of the driving operation, all go well beyond governmental regulatory rules for the industry.

"Furthermore, the payment of hourly rates for detention time, the payment of special cash and merchandise bonuses, and the unilaterally determined allocation of expenses between Aetna and the drivers suggest that there are more 'employee' attributes and less independence than would be present in a true independent contractor relationship." 194 NLRB No. 120.

Since we conclude that the Board properly applied the common law standards distinguishing between employees and independent contractors and that its findings that both the non-owner-drivers and single-owner-drivers are employees of Aetna are supported by substantial evidence, the order of the Board will be enforced.